# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### CHARLESTON DIVISION

| | | |
|---|---|---|
| ELVIS MOODIE, RAYON FISHER,<br>DESMOND ELLIS, and<br>KEISHA COLLINS-ENNIS, on behalf of<br>themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KIAWAH ISLAND INN COMPANY, LLC,<br>d/b/a KIAWAH ISLAND GOLF RESORT,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. __2:15-cv-1097-RMG____<br><br><br>**COMPLAINT – CLASS ACTION** |

## COMPLAINT

## PRELIMINARY STATEMENT

1.      Plaintiffs are Jamaican workers who were admitted to the United States to work under the H-2B temporary foreign worker visa program. Plaintiffs were employed by Defendant Kiawah Island Inn Company, LLC, d/b/a Kiawah Island Golf Resort ("Kiawah") in 2013 and 2014; some continue to work for Kiawah at the time of filing of this Complaint. Plaintiffs seek redress on behalf of themselves and all other similarly situated workers for Defendant's violation of their rights under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), the South Carolina Payment of Wages Act, S.C. CODE ANN. § 41-10-10 (1990), *et seq.* ("SCPWA"), and South Carolina contract law.

2.      This action is brought on behalf of a class that likely numbers over 500 "guest workers" from Jamaica who worked and continue to work at Kiawah as cooks, "kitchen helpers," dishwashers, servers, housekeepers, bellpersons, and cabana attendants. Plaintiffs and other class members are low-wage temporary workers brought by Defendant to the United States on time-

1

limited work visas because of an apparent shortage of U.S. workers to fill Defendant's available jobs. For years, Plaintiffs and the other class members have left their homes and families in Jamaica and spent considerable money and effort to come to the United States to work for Kiawah.

3.      Defendant failed to properly pay Plaintiffs and others similarly situated the federal minimum wage as required by the FLSA. Defendant also charged Plaintiffs and others similarly situated an excessive amount for employer-arranged and -controlled housing and transportation, far in excess of the reasonable cost of that housing and transportation.

4.      In addition, Defendant failed to pay Plaintiffs and other class members employed during the 2013 season the proper FLSA overtime wage rate, and did not pay them all wages due under the SCPWA, because Defendant failed to pay Plaintiffs and other class members the Supplemental Prevailing Wage as determined by the U.S. Department of Labor that year. Defendant also failed to pay Plaintiffs and other class members all wages due under the SCPWA in 2012, 2013, and 2014, because of Defendant's improper *de facto* and actual deductions from Plaintiffs' and other class members' wages.

5.      Defendant also breached its employment contracts with Plaintiffs and other class members. Furthermore, Defendant breached its contracts with the U.S. Department of Labor, which were intended to confer a benefit on Plaintiffs and other class members, including guaranteeing the wages that Plaintiffs and other class members would be paid.

6.      Plaintiffs, on behalf of themselves and the other class members, seek an award of money damages, declaratory and injunctive relief, statutory and/or actual damages and pre- and post-judgment interest to make them whole for damages each of them suffered due to

Defendant's violations of the law. Plaintiffs seek declaratory and injunctive relief to ensure that they and others are not subjected to similar practices in the future.

## JURISDICTION

7.      Jurisdiction is conferred upon this Court by 29 U.S.C. § 216(b), this action arising under the FLSA, and by 28 U.S.C. § 1331, this action arising under the laws of the United States. Jurisdiction over the SCPWA and the breach of contract claims is conferred by 28 U.S.C. § 1367 because these state claims are so closely related to the federal claim that they form part of the same case or controversy.

8.      Declaratory relief is authorized pursuant to 28 U.S.C. §§ 2201 and 2202.

## VENUE

9.      Venue is proper in this district pursuant to 28 U.S.C. §§1391(b) and (c). As set out herein, a substantial part of the events giving rise to Plaintiffs' claims occurred in this district.

## PARTIES

10.     At all times relevant to this action, Plaintiffs and the other class members were admitted to the United States under the H-2B temporary foreign worker visa program, 8 U.S.C. § 1101(a)(15)(H)(ii)(b), administered in part by the United States Department of Labor ("DOL").

11.     At all times relevant to this action, Plaintiffs and the other class members were employees of Defendant within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

12.     At all times relevant to this action, Plaintiffs and the other class members were employed by Defendant within the meaning of the FLSA, 29 U.S.C. § 203(g).

13.     Plaintiff Elvis Moodie is an individual who maintains his permanent residence in Jamaica. Mr. Moodie was employed by Defendant as a cook pursuant to an H-2B visa during the 2013 and 2014 seasons and expects to return shortly for the 2015 season.

14.     Plaintiff Rayon Fisher is an individual who maintains his permanent residence in Jamaica.  Mr. Fisher was employed by Defendant as a cook pursuant to an H-2B visa during the 2014 season.

15.     Plaintiff Desmond Ellis is an individual who maintains his permanent residence in Jamaica.  Mr. Ellis was employed by Defendant as a server pursuant to an H-2B visa during the 2014 season.

16.     Plaintiff Keisha Collins-Ennis is an individual who maintains her permanent residence in Jamaica.  Ms. Collins-Ennis was employed by Defendant as a housekeeper pursuant to an H-2B visa during the 2013 and 2014 seasons.

17.     Defendant Kiawah Island Inn Company, LLC, d/b/a Kiawah Island Golf Resort, is a Virginia limited liability company that conducts business in this district. Defendant Kiawah operates a resort on Kiawah Island, South Carolina, that contains multiple golf courses, lodging options including a hotel and villas, a spa, tennis courts, and other recreation options for guests. Kiawah also offers conference and meeting space and wedding facilities.

18.     At all times relevant to this action, Defendant Kiawah was engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1)(A), in that it operated a high-end golf resort just south of Charleston, South Carolina and is an enterprise whose annual gross volume of sales made or business done is not less than $500,000.

4

19.     At all times relevant to this action, Defendant Kiawah was an employer within the meaning of the SCPWA, S.C. CODE ANN. § 41-10-10(1) (1990).

## FACTS

### H-2B Visas and Recruitment of Workers

20.     An employer in the United States may sponsor foreign guest workers to perform unskilled labor of a temporary nature if DOL certifies that (1) there are insufficient available workers within the United States to perform the jobs, and (2) the employment of foreign guest workers will not adversely affect the wages or working conditions of similarly situated U.S. workers. 8 U.S.C. § 1101(a)(15)(H)(ii)(b).

21.     An employer seeking the admission of H-2B workers must first file a temporary labor certification application with DOL. 20 C.F.R. § 655.20 (2008).[1] This application must include an attestation from the employer that it will abide by applicable regulatory requirements, including:

a.     Payment to all workers of at least the applicable H-2B prevailing wage during the entire period of the H-2B labor certification. 20 C.F.R. § 655.22(e) (2008); and

b.     Limiting deductions from wages to only those that are "reasonable." DOL has determined that expenses related to the worker's procurement of a visa and travel from his home to the employer's worksite primarily benefit the employer and are not "reasonable" within the meaning of the FLSA. Accordingly, an employer may not shift these costs to the worker when doing so would effectively bring the

---

[1]     The DOL application for temporary employment certification of H-2B workers is titled the "ETA Form 9142B" and may be found at http://www.foreignlaborcert.doleta.gov/pdf/ETA_Form_9142B.pdf. The accompanying attestations are located on Form 9142B Appendix B.1, which can be found at http://www.foreignlaborcert.doleta.gov/pdf/Form_9142_AppendixB_1_012309.pdf.

worker's earnings below the applicable minimum and/or prevailing wage for the first workweek of employment. 20 C.F.R. § 655.22(g)(1) (2008); Field Assistance Bulletin No. 2009-2, August 21, 2009.

22.    Defendant Kiawah applied for temporary labor certifications to employ foreign workers at its resort in South Carolina in 2012, 2013, and 2014. These temporary labor certification applications identified Kiawah as the prospective employer of H-2B workers and sought certification for the following time periods:

    a.  April 1, 2012 to November 30, 2012;[2]

    b.  March 1 to November 30, 2013;[3] and

    c.  March 1 to November 30, 2014.[4]

23.    Each of these temporary labor certifications contained an attestation pursuant to 20 C.F.R. § 655.20 (2008) that Kiawah would abide by applicable regulatory requirements pertaining to the H-2B temporary work program and federal and state laws, including the requirement that Defendant pay Plaintiffs and other class members at least the H-2B prevailing wage.

24.    DOL reviewed and ultimately approved each of Defendant's temporary labor certification applications pursuant to 20 C.F.R. § 655.23(b), allowing Defendant to import H-2B

---

[2]  In 2012, Kiawah was granted certification to import 50 waiters and waitresses, 10 food preparation workers, 22 cooks, 10 bellpersons, and 21 amusement and recreation attendants, for a total of 113 H-2B workers. *See* H-2B Disclosure Data FY2012 *available at* http://www.foreignlaborcert.doleta.gov/performancedata.cfm.

[3]  In 2013, Kiawah requested certification to import 27 cooks, 14 "kitchen helpers," 53 servers, 74 housepersons, 10 bellpersons, and 20 cabana attendants, for a total of 198 H-2B workers. *See* Ex. C (2013 Kiawah 9142B Forms).

[4]  In 2014, Kiawah requested certification to import 35 cooks, 14 "kitchen helpers," 60 servers, 75 housepersons, 9 bellpersons, and 22 cabana attendants, for a total of 215 H-2B workers. *See* Ex. D (2014 Kiawah 9142B Forms).

workers to fill the labor needs set out in its temporary labor certification applications for the years 2012 to 2015.

25.    The DOL-approved temporary labor certification (ETA Form 9142B), the accompanying attestations, and the applicable regulatory requirements formed a contract between Defendant on the one hand and Plaintiffs and other class members on the other, with enforceable terms and conditions of employment, including an enforceable guarantee of wages no less than the federal minimum and H-2B prevailing wages.

26.    The DOL-approved labor certifications also formed valid and enforceable contracts between Defendant and DOL, which were intended to create a direct benefit to Plaintiffs and other class members, including the guarantee that Plaintiffs and other class members would not be paid less than the federal minimum and H-2B prevailing wages.

27.    Defendant sponsored the H-2B visas of Plaintiffs and other class members in order to fill its labor shortages. Plaintiffs' and other class members' H-2B visas allowed them to work only for Defendant Kiawah.

28.    Plaintiffs and other class members maintain their permanent residences at various locations in Jamaica, where they learned of the job opportunity with Defendant.

29.    Plaintiffs and other class members spent considerable sums of money to obtain their H-2B work visas and travel from their hometowns in Jamaica to the United States to work for Defendant in South Carolina. Plaintiffs and other class members incurred these costs, which were primarily for the benefit of their employer.

30.    Defendant Kiawah contracted with Florida East Coast Travel Services, Inc. ("FLECTS") to act as its agent to assist it in obtaining H-2B workers from Jamaica, including the Plaintiffs and other class members.  FLECTS is a labor recruiter based in Hialeah Lakes, Florida,

7

that offers recruitment and travel services to U.S. companies looking to import H-2A (agricultural) and H-2B (non-agricultural) workers from Jamaica, Mexico, South America, and the Caribbean.

31.     Prospective Jamaican H-2B workers must undertake a lengthy process to obtain an H-2B visa, consisting of interviews with Kiawah representatives, medical processing, and consular interviews.  FLECTS and the Jamaican Ministry of Labour and Social Security ("Ministry of Labour") organize this process, and Kiawah participates in it directly by requesting that certain workers return to Kiawah for another year, and by interviewing prospective employees in Jamaica.

32.     Prospective first-time H-2B workers attend interviews with a Kiawah representative in Jamaica. Plaintiffs interviewed with a Kiawah representative in Montego Bay.

33.     Following the interviews by Kiawah personnel in Jamaica, Kiawah selects the workers to hire pursuant to H-2B visas for the season, and provides their names to the Ministry of Labour. Kiawah also provides the Ministry of Labour with a list of names of past H-2B workers whom Kiawah has decided to re-hire for another season. The Ministry of Labour then notifies the selected H-2B workers that they have been hired or re-hired, and that they must travel to Kingston for medical processing.

34.     The Ministry of Labour notified Plaintiffs and other class members that they had been hired or re-hired by Kiawah and needed to travel to Kingston to undergo medical processing. Plaintiffs and other class members were required to undergo the medical processing as a condition of obtaining their H-2B visas.

35.     Plaintiffs and other class members had to pay for round-trip transportation from their hometowns to Kingston for the required medical processing in order to be eligible for an H-

8

2B visa to work at Kiawah. The Plaintiffs and other class members paid for the round-trip transportation to and from Kingston with their own money, which was never reimbursed to them by Defendant.

36.    Plaintiffs and other class members who passed the medical testing were again required to travel from their homes throughout Jamaica to Kingston for their H-2B visa interviews at the U.S. Embassy. An interview with the U.S. Embassy is prerequisite to a prospective H-2B worker beginning work for the sponsoring employer. The Plaintiffs and other class members paid for the trips to and from Kingston with their own money, which was never reimbursed to them by Defendant.

37.    Plaintiffs and other class members were required to pay approximately $200-250 each year for their H-2B visas. This money was never reimbursed to the Plaintiffs or other class members by Defendant.

38.    Plaintiffs and other class members who were granted H-2B visas to work for Kiawah were required to pay for one-way travel from their homes in Jamaica to Defendant's jobsite in South Carolina. After their H-2B visas were approved, the Plaintiffs and other class members paid approximately $420 per person each year in travel expenses to travel from their homes in Jamaica to Defendant's jobsite in South Carolina. This money was never reimbursed to Plaintiffs or other class members by Defendant.

39.    Following the approval of their H-2B visas by the U.S. Embassy, Plaintiffs and other class members traveled from their homes in Jamaica to South Carolina to begin work. Plaintiffs were required to fly from Kingston, Jamaica to Miami, Florida. From Miami, Plaintiffs were required to travel by bus to South Carolina.

40.     The expenses incurred by Plaintiffs and the other class members to come work for Defendant, as set out in paragraphs 35-38, were primarily for the benefit of Defendant within the meaning of the FLSA, 29 C.F.R. §§ 531.32(c) and 778.217.

41.     Defendant did not reimburse Plaintiffs or the other class members for the expenses they incurred to come work for Defendant, as set out in paragraphs 35-38 above.

42.     The costs described in paragraphs 35-38 operated as *de facto* involuntary deductions from, and/or a kickback of, Plaintiffs' and other class members' first workweek's wages.

43.     The above *de facto* deductions for costs that were primarily for the benefit of Defendant caused the wages of Plaintiffs and the other class members to fall below the minimum level required by the FLSA and the federal prevailing wage mandated under the H-2B program during their first workweek.

44.     Defendant never notified Plaintiffs or other class members in writing at the time of hiring of the amount or terms of the *de facto* and other deductions which would be made from their wages, as required by the SCPWA.

**2013 Supplemental Prevailing Wage Determinations**

45.     Employers of H-2B workers are required to pay at least the applicable prevailing wage during the entire period of the H-2B labor certification. 20 C.F.R. § 655.22(e) (2008).

46.     On April 24, 2013, the Department of Homeland Security and DOL jointly published an Interim Final Rule that revised the methodology by which the DOL calculates prevailing wages for the H-2B program.

47.     In late June and early July 2013, DOL sent letters to Kiawah informing the company of the new prevailing wages applicable to the job categories for which Kiawah had

requested H-2B workers. *See* Ex. B (DOL Supplemental Prevailing Wage Notification Letters to Kiawah).

48.    All applicable prevailing wages for H-2B workers at Kiawah increased under DOL's new methodology for calculating prevailing wages, as follows:

a.    The prevailing wage for a cabana attendant increased by $1.31/hour, from $8.25/hour to $9.56/hour;

b.    The prevailing wage for a server increased by $0.88/hour, from $9.00/hour to $9.88/hour;

c.    The prevailing wage for a houseperson (housekeeper) increased by $1.03/hour, from $8.24/hour to $9.27/hour;

d.    The prevailing wage for a "kitchen helper" increased by $2.20/hour, from $8.15/hour to $10.35/hour;

e.    The prevailing wage for a cook increased by $0.97/hour, from $9.38/hour to $10.35/hour; and

f.    The prevailing wage for a bellperson increased by $0.01/hour, from $8.50/hour to $8.51/hour.

49.    In its letters to Kiawah informing the company of the increase in applicable prevailing wages, DOL wrote, in bold type, that "In accordance with the employer's declaration in Appendix B.1, the employer is responsible for compliance with this supplemental prevailing wage determination (PWD) upon receipt of notification by DOL." *See* Ex. B (DOL Supplemental Prevailing Wage Notification Letters to Kiawah).

50.    DOL mailed its notifications of supplemental prevailing wage determinations to Kiawah on the following dates:

a. Houseperson: June 25, 2013;

b. Server: July 3, 2013;

c. Cabana Attendant: July 11, 2013; and

d. Kitchen Helper, Cook, and Bellperson: July 12, 2013.

51.    After receiving these notification letters from DOL, Kiawah did not increase the wages of Plaintiffs or other class members employed during the 2013 season.

**Overcharging Kiawah's H-2B Workers for Housing and Transportation**

52.    Plaintiffs and other class members lived in an apartment complex approximately one hour from the Kiawah Island worksite, in the West Ashley area of Charleston.  Defendant located, arranged for, and controlled the housing for Plaintiffs and other class members.

53.    Plaintiffs and other class members shared apartments with other Kiawah H-2B workers. Two-bedroom apartments were shared by four Kiawah H-2B workers, while three-bedroom apartments were shared by six Kiawah H-2B workers. Defendant managed specific details of the Plaintiffs' and other class members' housing, including assigning them to live in specific apartments and distributing keys to those apartments.

54.    Defendant arranged for a bus to transport workers between the apartment complex and the Kiawah Island worksite at specific times every day. No public transportation options exist to travel between Kiawah Island and Charleston.

55.    Defendant deducted approximately $165 per person every two weeks from Plaintiffs' and other class members' paychecks for housing. The $165 deduction was made from each worker's check irrespective of the number of individuals living in the apartment, and irrespective of the number of paychecks in a given month.

56.     The amount deducted from Plaintiffs' and others class members' paychecks for housing was approximately twice the market value of such housing.

57.     Defendant also deducted approximately $36 per person every two weeks from Plaintiffs' and other class members' paychecks for transportation.  The amounts deducted by Defendant from the Plaintiffs' and other class members' wages for transportation were primarily for the benefit of the employer within the meaning of the FLSA.

58.     The amounts deducted from Plaintiffs' and other class members' paychecks for housing and transportation were not reasonable within the meaning of the FLSA. 29 C.F.R. § 531.3(b).

59.     The unreasonable housing and transportation deductions contributed to the wages of Plaintiffs and the other class members falling below the minimum level required by the FLSA and the federal prevailing wage mandated under the H-2B program during various workweeks, including the first workweek.

60.      Defendant never notified Plaintiffs or other class members in writing at the time of hiring of the housing- or transportation-related deductions which would be made from their wages, as required by the SCPWA.

## COLLECTIVE ACTION/CLASS ACTION ALLEGATIONS

61.     Plaintiffs seek to bring their FLSA claims (Count I) as a representative action on behalf of "all H-2B temporary foreign workers admitted to the United States pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(b), who were employed by the Defendant within three years of the filing of their consent to sue form and the present." These workers are all similarly situated with respect to the pay practices challenged in this suit—*i.e.*, Defendant's practice of not reimbursing the visa and transportation costs incurred by Plaintiffs and other H-2B workers as a condition of coming

to work for Kiawah, and Defendant's practice of overcharging Plaintiffs and other H-2B workers for housing and transportation, which resulted in Plaintiffs and other H-2B workers earning less than the FLSA minimum wage. In addition, Defendant's failure to pay those Plaintiffs and other H-2B workers employed during the 2013 season the higher supplemental prevailing wage after being informed by DOL resulted in those Plaintiffs and other H-2B workers being paid an improper overtime wage rate, in violation of the FLSA.

62.     Pursuant to 29 U.S.C. § 216(b), Plaintiffs Elvis Moodie, Rayon Fisher, Desmond Ellis, and Keisha Collins-Ennis have consented in writing to be party plaintiffs in this FLSA action. Their written consents are attached to this Complaint as Exhibit A.

63.     Plaintiffs' SCPWA claim (Count II) and breach of contract claims (Counts III and IV) are brought by the Plaintiffs on behalf of themselves and all similarly situated workers pursuant to Federal Rule of Civil Procedure 23(b)(3).

64.     The named Plaintiffs seek to represent a Rule 23 class consisting of "all those individuals admitted as H-2B temporary foreign workers pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(b) who were employed by Defendant in 2012, 2013 and 2014."

65.     The proposed class meets the requirements of Rule 23(a) as follows:

**Numerosity**

66.     The precise number of individuals in the class is known only to Defendants. The class is believed to include as many as 500 individuals. During the relevant time period, Defendant was certified to employ approximately 526 H-2B workers.

67.     The class is comprised primarily of low-wage, low-skilled workers who maintain their residences in locations throughout Jamaica. The relatively small size of individual claims, the geographical dispersion of the class, and the indigence of class members make the

maintenance of separate actions by each class member economically infeasible. Joinder of all class members is impractical.

**Commonality**

68.    There are questions of fact and law common to the class. The common contentions that unite the class include the following:

a.   Whether, due to the *de facto* and actual deductions taken from the Plaintiffs' and other class members' wages, the Defendant failed to pay Plaintiffs and other class members their wages due, in violation of the SCPWA.

b.   Whether the failure of Defendant to inform the Plaintiffs and other class members in writing at the time they were hired of the amount and terms of the *de facto* and actual deductions that would be taken from their pay violated the SCPWA.

c.   Whether the failure of Defendant to pay Plaintiffs and other class members the applicable H-2B prevailing wage after Defendant received notification of an increase in the applicable prevailing wages in June and July 2013 violated the SCPWA.

d.   Whether, due to the *de facto* and actual deductions taken from the Plaintiffs' and other class members' wages, the Defendant failed to pay Plaintiffs and other class members the applicable H-2B prevailing wage, in violation of the Plaintiffs' and other class members' contracts with the Defendant, or in violation of the Defendant's contracts with the DOL of which the Plaintiffs and other class members were third-party beneficiaries.

e.   Whether the failure of Defendant to pay Plaintiffs and other class members the applicable H-2B prevailing wage after Defendant received notification of an

increase in the applicable prevailing wages in June and July 2013 violated the

Plaintiffs' and other class members' contracts with the Defendant, or violated the

Defendant's contract with the DOL of which the Plaintiffs and other class

members were third-party beneficiaries.

**Typicality**

69.     The claims of the named Plaintiffs are typical of the class in that all of the named

Plaintiffs and other class members had their wages reduced below the applicable prevailing wage

due to the Defendant's *de facto* and actual deductions from their wages.  In addition, neither the

named Plaintiffs nor other class members were provided any notification in writing at the time

they were hired of the *de facto* and actual deductions to be taken from their wages.  Finally, the

named Plaintiffs and the other class members employed during the 2013 season were all not paid

the applicable prevailing wage in the second half of 2013, after DOL informed Defendant that it

was required to pay a higher H-2B prevailing wage. Because Plaintiffs and the proposed class

challenge the lawfulness of Defendant Kiawah's uniform pay practices, it is anticipated that

Defendant will assert similar defenses as to all of the individual Plaintiffs and class members.

**Adequacy of Representation**

70.     Plaintiffs are adequate class representatives. The named Plaintiffs have the same

interests as do the other members of the class and will fairly and adequately protect the interests

of the class. Plaintiffs have no conflict of interest with other class members and they understand

their responsibilities as class representatives.

71.     Counsel for Plaintiffs have handled numerous class action suits in the federal

courts involving similar claims to those of the Plaintiffs and class members in this case. They are

prepared to advance litigation costs as necessary to vigorously litigate this action.

**Predominance of Common Questions**

72.     The questions of law or fact common to the class predominate over any questions affecting only individual members because the dominant issue for all class members is the legality of Defendant Kiawah's pay practices, which applied to all class members.

**Superiority**

73.     A class action under Rule 23(b)(3) is superior to other available methods for the fair and efficient adjudication of this controversy because, *inter alia*:

    a.   The relatively small size of the individual class members' claims substantially diminish the interest of members of the class in individually controlling the prosecution of separate actions;

    b.   Many members of the class are unaware of their rights to prosecute these claims and lack the means or resources to secure legal assistance;

    c.   There has been no litigation already commenced against Defendant by the members of the class to determine the question presented;

    d.   It is desirable that the claims be heard in this forum since Defendant has significant contacts with this district; and

    e.   A class action can be managed without undue difficulty since Defendant regularly committed the violations complained of herein, and is required to maintain detailed records concerning each member of the class.

## COUNT I

### FAIR LABOR STANDARDS ACT

### (Collective Action)

74.     All the foregoing allegations are incorporated by reference as if set forth fully herein.

75.     This count sets forth a claim for declaratory relief and damages for Defendant's violation of the minimum wage and overtime provisions of the Fair Labor Standards Act ("FLSA"). This count is brought by Plaintiffs on behalf of themselves and other current or former H-2B workers employed by Defendant who are similarly situated.

76.     Defendant violated the FLSA, 29 U.S.C. § 206(a), by failing to pay Plaintiffs and other H-2B workers at least $7.25, the federal minimum wage, for every compensable hour of labor they performed during each workweek they were employed.

77.     Defendant's violations of the FLSA resulted, in part, from Defendant's failure to reimburse Plaintiffs and others similarly situated for certain pre-employment expenses they incurred which were primarily for Defendant's benefit, reducing Plaintiffs' wages below the minimum wage for the first workweek, as set forth in Paragraphs 35-38.

78.     Defendant's violations of the FLSA also resulted, in part, from Defendant's unreasonable and/or improper deductions from Plaintiffs' wages for housing and transportation, as set forth in Paragraphs 55-58. 29 C.F.R. § 531.3(b).

79.     Defendant violated the FLSA, 29 U.S.C. § 207(a), by failing to pay those Plaintiffs and other H-2B workers employed during the 2013 season the proper overtime wage rate after the DOL notified Defendant of an increase in the H-2B prevailing wage required to be paid to its H-2B employees.

80.     Defendant's failure to pay Plaintiffs and others similarly situated their federally mandated minimum and overtime wages was a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

81.     As a consequence of Defendant's violations of the FLSA, Plaintiffs and others similarly situated are entitled to recover their unpaid minimum and overtime wages, plus an additional equal amount in liquidated damages, the costs of suit, and reasonable attorneys' fees pursuant to 29 U.S.C. § 216(b).

## COUNT II

### SOUTH CAROLINA PAYMENT OF WAGES ACT

### (Rule 23 Class Action)

82.     All the foregoing allegations are incorporated by reference as if fully set forth herein.

83.     This count sets forth a claim by Plaintiffs and other members of the class for money damages, declaratory relief and injunctive relief, with respect to Defendant's violations of the South Carolina Payment of Wages Act ("SCPWA").

84.     Plaintiffs seek to represent a class defined as "all those individuals admitted as H-2B temporary foreign workers pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(b) who were employed by Defendant in 2012, 2013 and 2014."

85.     Defendant violated the SCPWA, S.C. CODE ANN. §§ 41-10-10 (1990), *et seq.*, by failing to pay Plaintiffs and other class members all wages due.

86.     Defendant failed to provide written notice to the Plaintiffs and the other class members at the time of hire of the agreed upon wages and the deductions to be taken from Plaintiffs' and other class members' wages.

87. Because of Defendant's failure to provide written notice to Plaintiffs and other class members at the time of hire of the agreed upon wages, the agreed upon wages, at a minimum, required Defendant to pay Plaintiffs and the other class members in accordance with the terms of the Plaintiffs' and other class members' H-2B visas sponsored by the Defendants.

88. Defendant violated the SCPWA by failing to pay wages due when it deducted from Plaintiffs' and other class members wages' money for housing and transportation without having given written notification of the amount and terms of the deductions as required by S.C. CODE ANN. § 41-10-40(C). These deductions resulted in Plaintiffs and other class members earning less than the wages they were due under the SCPWA.

89. Defendant also violated the SCPWA by failing to pay wages due when it did not reimburse Plaintiffs and other class members for certain pre-employment expenses they incurred which were primarily for Defendant's benefit, as set forth in Paragraphs 35-38. Defendant withheld or diverted these pre-employment expenses from Plaintiffs' and other class members' wages without having given written notification of the amount and terms of these *de facto* deductions as required by S.C. CODE ANN. § 41-10-40(C). These deductions resulted in Plaintiffs and other class members earning less than the wages they were due under the SCPWA.

90. Defendant further violated the SCPWA by failing to pay the Plaintiffs and other class members employed during the 2013 season their wages due by failing to pay the supplemental prevailing wage after Defendant was notified by the DOL of the change in prevailing wages in late June and early July 2013, and as required by the terms of the Plaintiffs' and other class members' H-2B visas sponsored by the Defendants.

91.     Defendant's violations of the SCPWA were done knowingly and in bad faith. There is no bona fide dispute as to the wages owed because the wages owed are dictated by federal law.

92.     As a consequence of Defendant's violations of the SCPWA, Plaintiffs and other class members are entitled to recover an amount equal to three times the full amount of their unpaid wages, plus the costs of suit and reasonable attorneys' fees pursuant to S.C. CODE ANN. § 41-10-80(C).

**COUNT III**

**BREACH OF EMPLOYMENT CONTRACT**

**(Rule 23 Class Action)**

93.     All the foregoing allegations are incorporated by reference as if fully set forth herein.

94.     This count sets forth a claim for damages resulting from Defendant Kiawah's breaches of its employment contracts with Plaintiffs and the other class members.

95.     Plaintiffs seek to represent a class defined as "all those individuals admitted as H-2B temporary foreign workers pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(b) who were employed by Defendant in 2012, 2013 and 2014."

96.     The terms and conditions provided in the temporary labor certification (ETA Form 9142B), its accompanying attestations, and the law and regulations applicable to the H-2B program constituted the employment contracts between Plaintiffs and the other class members and Defendant.

97.     Plaintiffs and the other class members satisfactorily performed all employment duties and responsibilities required of them under the employment contracts with Defendant.

98.     Defendant breached the employment contracts with Plaintiffs and the other class members by compensating the Plaintiffs and other class members below the federal minimum wage and applicable H-2B prevailing wages for their work.

99.     Defendant's breach of the employment contracts caused Plaintiffs and the other class members substantial injuries, for which Plaintiffs and the other class members are entitled to actual and consequential damages and prejudgment interest.

## COUNT IV

### THIRD-PARTY BENEFICIARY CLAIM FOR BREACH OF CONTRACT

### (Rule 23 Class Action)

100.     All the foregoing allegations are incorporated by reference as if fully set forth herein.

101.     This count in pled in the alternative to Count III and sets forth a third-party beneficiary claim for damages resulting from the breach of the contracts between the U.S. Department of Labor (DOL) and Defendant.

102.     Plaintiffs seek to represent a class defined as "all those individuals admitted as H-2B temporary foreign workers pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(b) who were employed by Defendant in 2012, 2013 and 2014."

103.     The temporary labor certifications (ETA Form 9142B) filed by Defendant, and subsequently approved by DOL, constitute valid and enforceable contracts.

104.     These contracts were intended to create a direct benefit to Plaintiffs and other class members.

105.     Plaintiffs and the other class members are third-party beneficiaries of the contracts Defendant entered into with DOL.

106.     Defendant breached its contracts with DOL by compensating the Plaintiffs and other class members below the federal minimum wage and applicable H-2B prevailing wages for their work.

107.     Defendant's breach of its contracts with DOL caused the Plaintiffs and other class members substantial injuries, for which Plaintiffs and the other class members are entitled to actual and consequential damages and prejudgment interest.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs and the other class members pray this Court will enter an order:

1.  Entering a declaratory judgment that Defendant violated Plaintiffs' and other class members' rights under the FLSA and the SCPWA, that Defendant breached each individual contract with each Plaintiff and class member, and that Defendant breached each contract with the Department of Labor to which Plaintiffs and other class members were third-party beneficiaries;

2.  Permanently enjoining Defendant from further violations of the FLSA and SCPWA;

3.  Permitting this case to proceed as a collective action with respect to the claims set forth in Count I;

4.  Certifying this case as a class action in accordance with Federal Rule of Civil Procedure 23(b)(3) with respect to the claims set forth in Counts II, III, and IV;

5.  Granting judgment in favor of Plaintiffs and others similarly situated and against Defendant Kiawah Island Inn Company, LLC on Plaintiffs' claims under the FLSA and awarding each of them the amount of his/her unpaid minimum and overtime wages, along with an equal amount of liquidated damages;

6. Granting judgment in favor of Plaintiffs and other class members and against Defendant Kiawah Island Inn Company, LLC on Plaintiffs' and other class members' claims under the SCPWA and awarding each of them three times the amount of his/her unpaid wages;

7. Granting judgment in favor of Plaintiffs and the other class members against Defendant Kiawah Island Inn Company, LLC for breach of the employment contracts with Plaintiffs, and awarding each of the Plaintiffs and the other class members their actual and consequential damages and prejudgment interest;

8. Granting judgment in favor of third-party beneficiary Plaintiffs and the other class members against Defendant for breach of the employment contracts with the U.S. Department of Labor, and awarding each of the Plaintiffs and the other class members their actual and consequential damages and prejudgment interest;

9. Awarding Plaintiffs the cost of this action;

10. Awarding Plaintiffs a reasonable attorney's fee; and

11. Granting such relief as this Court deems just and equitable.

Respectfully submitted,

/s/ Nancy Bloodgood
Nancy Bloodgood (Federal Bar No. 5208)
nbloodgood@fosterfoster.com
Lucy Sanders (Federal Bar No. 10834)
lsanders@fosterfoster.com
Foster Law Firm, L.L.C.
895 Island Park Drive, Suite 202
Charleston, SC 29492
Telephone: (843) 972-0313
Facsimile: (888) 519-0934

Sarah M. Rich* (TX Bar No. 24085551)
sarah.rich@splcenter.org
James M. Knoepp[+] (GA Bar No. 366241)
jim.knoepp@splcenter.org
Michelle R. Lapointe[+] (GA Bar No. 007080)

michelle.lapointe@splcenter.org
Southern Poverty Law Center
1989 College Ave. NE
Atlanta, GA 30317
Telephone: (404) 521-6700
Facsimile: (404) 221-5857

\* Application for admission *pro hac vice*
forthcoming.

[+] Application for admission *pro hac vice* filed
contemporaneously.

ATTORNEYS FOR PLAINTIFFS