UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| ELVIS MOODIE, RAYON FISHER, DESMOND ELLIS, and KEISHA COLLINS-ENNIS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KIAWAH ISLAND INN COMPANY, LLC, d/b/a KIAWAH ISLAND GOLF RESORT,<br><br>Defendant. | Case No. 2:15-cv-01097-RMG |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

This is an action by Jamaican "guest workers" admitted to the United States to work under the H-2B temporary foreign worker visa program for Defendant Kiawah Island Inn Company ("Kiawah"), a golf resort in Charleston County, South Carolina. Plaintiffs contend that Defendant violated their rights, and the rights of those similarly situated, *inter alia*, under the South Carolina Payment of Wages Act ("SCPWA"), S.C. CODE ANN. §§ 41-10-10 (1990), *et seq.*, and as set forth in their uniform employment contracts.[1]

Plaintiffs and other class members in this case are citizens of Jamaica who were admitted to the United States under the H-2B temporary foreign worker visa program for the purpose of employment at Kiawah. Plaintiffs seek the Court's determination that Counts II, III, and IV of this action may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3).

---

[1] Plaintiffs also allege that the Defendants violated their rights, and the rights of those similarly situated, by failing to comply with the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219. Plaintiffs are concurrently filing a motion for conditional certification of a collective action under the FLSA with respect to Count I of their Complaint.

1

## THE PROPOSED CLASS

The Plaintiffs seek class certification under Rule 23(b)(3) with respect to claims presented in Counts II, III, and IV of their Complaint. The proposed class, represented by Elvis Moodie, Rayon Fisher, Desmond Ellis, and Keisha Collins-Ennis, consists of

> All those individuals admitted as H-2B temporary foreign workers pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(b) who were employed by Defendant in 2012, 2013 and 2014.

*See* Compl. ¶ 64. It is estimated that Defendant was certified for employment of over 500 H-2B temporary foreign workers at its South Carolina resort who meet the class definition for the specified time period. *Id.* ¶¶ 22, 66.

## BACKGROUND

The H-2B visa program allows employers in the United States to bring in foreign "guest workers" on temporary visas only if there are insufficient U.S. workers available to perform the job(s) and if hiring H-2B workers does not adversely affect the wages or working conditions of similarly situated U.S. workers. *See* 8 U.S.C. § 1101(a)(15)(H)(ii)(b). This requires the U.S. employer, *inter alia*, to pay its H-2B workers at least the federally-mandated prevailing wage. 20 C.F.R. § 655.22(e).

Defendant Kiawah has staffed various positions at its golf resort with Jamaican H-2B workers over the past several years. *See* Compl. ¶ 22. In order to use the H-2B program to fill positions at its resort, Kiawah was required to attest that it could not find sufficient U.S. workers to work as cooks, servers, housekeepers, and in other positions. ECF Nos. 1-3 (2013 Kiawah 9142B Forms), 1-4 (2014 Kiawah 9142B Forms). In 2012, 2013, and 2014, the Department of Labor ("USDOL") certified Kiawah to bring in over 500 H-2B workers. *Id.*; *see also* Compl. ¶ 22.

Kiawah recruited and hired all of its H-2B workers in Jamaica, requiring all of them to pay their own visa and travel expenses and never reimbursing any of them for those expenses. Compl. ¶¶ 30-33; Ex. B (Decl. of Elvis Moodie) ¶¶ 2-3, 7-13; Ex. C (Decl. of Rayon Fisher) ¶¶ 2-3, 7-10; Ex. D (Decl. of Desmond Ellis) ¶¶ 2-3, 7-10; Ex. E (Decl. of Keisha Collins-Ennis) ¶¶ 2-3, 7-13. At the time of hire, Kiawah did not inform any of its H-2B workers in writing of the agreed-upon wages and the deductions to be taken from their wages. Compl. ¶¶ 44, 60; Ex. B (Decl. of Elvis Moodie) ¶ 18; Ex. C (Decl. of Rayon Fisher) ¶ 15; Ex. D (Decl. of Desmond Ellis) ¶ 15; Ex. E (Decl. of Keisha Collins-Ennis) ¶ 18. Kiawah then employed all of its H-2B workers at its South Carolina resort pursuant to nearly identical H-2B contracts, which differed only in the position and the wage rate. ECF Nos. 1-3 (2013 Kiawah 9142B Forms), 1-4 (2014 Kiawah 9142B Forms). Under those contracts, Kiawah was required to pay all of its H-2B workers the applicable prevailing wage for their position and to abide by all other applicable regulatory requirements. *Id.* Further, Kiawah required all its H-2B workers to live in the same housing complex and to take the same transportation between the apartment complex and the resort, charging each H-2B worker the same amount for housing and transportation. Compl. ¶¶ 52-57; Ex. B (Decl. of Elvis Moodie) ¶¶ 14-17; Ex. C (Decl. of Rayon Fisher) ¶¶ 11-14; Ex. D (Decl. of Desmond Ellis) ¶¶ 11-14; Ex. E (Decl. of Keisha Collins-Ennis) ¶¶ 14-17. Plaintiffs contend, on behalf of themselves and all others similarly situated, that these uniform practices and policies by Defendant Kiawah towards its Jamaican H-2B workers violated the SCPWA and South Carolina contract law.

**ARGUMENT**

Plaintiffs seek class certification under Federal Rule of Civil Procedure 23 with respect to claims presented in Counts II, III, and IV of their Complaint. Compl. ¶¶ 82-107. A party

seeking class certification "must present evidence that the putative class complies with Rule 23." *EQT Production Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014). To comply with Rule 23, the prospective class must meet the four prerequisites of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *Id.* "In addition, 'the class action must fall within one of the three categories enumerated in Rule 23(b).'" *Id.* (quoting *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 423 (4th Cir. 2003)). Plaintiffs meet the requirements of Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Class actions exist "to conserve the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23." *Parker v. Asbestos Processing, LLC*, C/A No. 0:11-cv-01800-JFA, 2015 WL 127930, at *5 (D.S.C. Jan. 8, 2015) (quoting *Gen. Tel. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982)) (internal quotation marks omitted). "Therefore, district courts should give Rule 23 a liberal rather than a restrictive construction, adopting a standard of flexibility in application which will in the particular case best serve the ends of justice for the affected parties and promote judicial efficiency." *Id.* (quoting *Gunnells*, 348 F.3d at 424) (internal quotation marks omitted). In this case, the proposed, readily ascertainable class clearly meets the prerequisites of numerosity, commonality, typicality, and adequacy. Furthermore, common questions of law and fact predominate over individual matters in this case, and a class action would be far superior to any other method of adjudicating the legal claims of the more than 500 potential H-2B class

members who worked for Defendant Kiawah during the relevant time period pursuant to uniform employment contracts.

## I.      Plaintiffs Satisfy All Prerequisites for a Class Action.

### A.  A Readily Identifiable and Ascertainable Class Exists.

"Rule 23 contains an implicit threshold requirement that the members of a proposed class be 'readily identifiable,'" or ascertainable. *EQT*, 764 F.3d at 358 (quoting *Hammond v. Powell*, 462 F.2d 1053, 1044 (4th Cir. 1972)). The district court must be able to "readily identify the class members in reference to objective criteria," *id.*, without holding "mini-trials" or engaging in "extensive and individualized fact-finding." *Id.* (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.2d 583, 593 (3d Cir. 2012)) (internal quotation marks omitted).

The proposed class consists of an easily ascertainable group of workers. By examining Defendants' payroll records and petitions to the U.S. Citizenship and Immigration Services, a roster of class members that consists of all H-2B temporary foreign workers employed by Defendant in 2012, 2013, and 2014 may be constructed with relative ease.

### B.  The Class is So Numerous that Joinder of All Members is Impracticable.

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no bright-line test or cut-off point for numerosity. *Lott v. Westinghouse Savannah River Co., Inc.*, 200 F.R.D. 539, 550 (D.S.C. 2000). Indeed, "[c]ourts have held that joinder was impracticable when there were anywhere between twenty-five and two million class members." *Cuming v. S. Carolina Lottery Comm'n*, No. 3:05-CV-03608-MBS, 2008 WL 906705, at *3 (D.S.C. Mar. 31, 2008) (citing 7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1762 (2d ed. 2007)). The court must instead make a determination based on its "practical judgment in light of the particular facts

of the case." *Lott*, 200 F.R.D. at 550. It is not necessary to identify the exact number of class members. *See Cuming*, 2008 WL 906705, at *3.

The proposed class in this case potentially numbers more than 500 individual H-2B temporary foreign workers from Jamaica who worked at Defendant's South Carolina resort in 2012, 2013, and 2014. Compl. ¶ 22; ECF Nos. 1-3 (2013 Kiawah 9142B Forms), 1-4 (2014 Kiawah 9142B Forms). A class of potentially more than 500 members is clearly large enough to satisfy the numerosity requirement. *See, e.g.*, *Savani v. Washington Safety Mgmt. Solutions, LLC*, No. 1:06-CV-02805-MBS, 2012 WL 3757239, at *2 (D.S.C. Aug. 28, 2012) (finding numerosity satisfied for a proposed class of 150 employees and a proposed subclass of 75).

Furthermore, joinder of all Defendant's H-2B workers from 2012, 2013, and 2014 is clearly impracticable. "Practicability of joinder depends on the size of the class, ease of identifying its numbers and determining their addresses, facility of making service on them if joined in the action and their geographic dispersion." *Lott*, 200 F.R.D. at 550. Geographic dispersion makes joinder of all class members highly difficult. *See Rosiles-Perez v. Superior Forestry Serv., Inc.*, 250 F.R.D. 332, 338-39 (M.D. Tenn. 2008); *Recinos-Recinos v. Express Forestry, Inc.*, 233 F.R.D. 472, 478 (E.D. La. 2006) (finding joinder impracticable for class of migrant H-2B guest workers from Guatemala and Mexico). In addition, unfamiliarity with the U.S. legal system and the small size of individual claims are factors favoring a numerosity finding. *Rosiles-Perez*, 250 F.R.D. at 338-39.

Proposed class members in this case are current and former temporary H-2B foreign workers of Defendant Kiawah who maintain their permanent homes throughout Jamaica. The relatively small size of the individual putative class members' claims, along with their unfamiliarity with the U.S. legal system, further weigh in favor of class treatment in this case.

Moreover, former H-2B workers from 2012-2014 who currently reside in Jamaica may be extremely difficult for Plaintiffs to locate, making joinder impracticable. Therefore, the proposed class in this case clearly satisfies the numerosity requirement of Rule 23(a)(1).

### C. There Are Questions of Law and Fact Common to the Class.

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Where plaintiffs bring a class action under Rule 23(b)(3), as named Plaintiffs do here, this "'commonality' requirement of Rule 23(a)(2) is 'subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class predominate over' other questions." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 n.4 (4th Cir. 2001) (quoting *Amchen Prods., Inc. v. Windsor*, 521 U.S. 591, 609 (1997)). Commonality will therefore be discussed briefly here and will be treated in greater depth in the Rule 23(b)(3) predominance section *infra*.

The commonality requirement of Rule 23(a)(2) requires that at least a single question of law or fact be shared by each class member. *See Parker*, 2015 WL 127930, at *6 (citing *Wal-Mart Stores, Inc. v. Dukes*, — U.S. —, —, 131 S. Ct. 2541, 2556 (2011) and *Holsey v. Armour & Co.* 743 F.2d 199, 216-17 (4th Cir. 1984)). "Where the injuries complained of by named plaintiffs allegedly result from the same unlawful pattern, practice, or policy of the defendants, the commonality requirement is usually satisfied." *Id.* at *7.

In this case, the three Rule 23 class claims—those arising under the SCPWA (Count II) and South Carolina contract law (Counts III and IV)—stem from Defendants' recruitment, hiring, pay, transportation, and housing policies and practices, which applied uniformly to the named Plaintiffs and proposed class members alike. Members of the proposed class are all H-2B temporary foreign workers recruited and hired by Defendant in Jamaica to work under identical

7

contracts, differing only in position and wage rate, at Defendant's Charleston-area resort. *See* ECF Nos. 1-3 (2013 Kiawah 9142B Forms), 1-4 (2014 Kiawah 9142B Forms). Defendant was required under those contracts to pay its H-2B workers the applicable prevailing wage set by the USDOL, which Defendant promised to do as part of its application to bring in temporary foreign workers. *Id.*

Instead, Plaintiffs and proposed class members were all required to pay their own travel and visa expenses to work for Defendant, which were primarily for Defendant's benefit and which had the effect of lowering workers' first week's wages below the federal H-2B prevailing wage. Ex. B (Decl. of Elvis Moodie) ¶¶ 2-3, 7-13; Ex. C (Decl. of Rayon Fisher) ¶¶ 2-3, 7-10; Ex. D (Decl. of Desmond Ellis) ¶¶ 2-3, 7-10; Ex. E (Decl. of Keisha Collins-Ennis) ¶¶ 2-3, 7-13. Plaintiffs and members of the proposed class lived in the same Defendant-arranged apartment complex in Charleston and rode the same Defendant-arranged bus to and from the worksite, for which Defendant made uniform deductions from the H-2B workers' paychecks. Ex. B (Decl. of Elvis Moodie) ¶¶ 14-17; Ex. C (Decl. of Rayon Fisher) ¶¶ 11-14; Ex. D (Decl. of Desmond Ellis) ¶¶ 11-14; Ex. E (Decl. of Keisha Collins-Ennis) ¶¶ 14-17. Finally, Defendant Kiawah never notified Plaintiffs or the proposed class members in writing at the time of hiring of the amount or terms of the actual or *de facto* deductions which would be made from their wages. Ex. B (Decl. of Elvis Moodie) ¶ 18; Ex. C (Decl. of Rayon Fisher) ¶ 15; Ex. D (Decl. of Desmond Ellis) ¶ 15; Ex. E (Decl. of Keisha Collins-Ennis) ¶ 18.

Plaintiffs and proposed class members would raise common questions of law related to Defendant's above-described uniform policies and practices, including:

a. Whether, due to the *de facto* and actual deductions taken from the Plaintiffs' and other class members' wages, the Defendant failed to pay Plaintiffs and other class members their wages due, in violation of the SCPWA.

b. Whether the failure of Defendant to inform the Plaintiffs and other class members in writing at the time they were hired of the amount and terms of the *de facto* and actual deductions that would be taken from their pay violated the SCPWA.

c. Whether the failure of Defendant to pay Plaintiffs and other class members the applicable H-2B prevailing wage after Defendant received notification of an increase in the applicable prevailing wages in June and July 2013 violated the SCPWA.

d. Whether, due to the *de facto* and actual deductions taken from the Plaintiffs' and other class members' wages, the Defendant failed to pay Plaintiffs and other class members the applicable H-2B prevailing wage, in violation of the Plaintiffs' and other class members' contracts with the Defendant, or in violation of the Defendant's contracts with the USDOL of which the Plaintiffs and other class members were third-party beneficiaries.

e. Whether the failure of Defendant to pay Plaintiffs and other class members the applicable H-2B prevailing wage after Defendant received notification of an increase in the applicable prevailing wages in June and July 2013 violated the Plaintiffs' and other class members' contracts with the Defendant, or violated the Defendant's contract with the USDOL of which the Plaintiffs and other class members were third-party beneficiaries.

Given the numerous questions of law that are common to the entire proposed class in this case, and given that the injuries that named Plaintiffs complain of on behalf of the class arise from Defendant's uniform policies and practices, the commonality requirement of Rule 23(a)(2) is satisfied.

### D. The Claims of the Representative Parties Are Typical of the Class's Claims.

Rule 23(a)(3) requires that the class representatives' claims be typical of those the class as a whole. Fed. R. Civ. P. 23(a)(3). In practice, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Lienhart*, 255 F.3d at 146 (quoting *Gen. Tel. of Sw. v. Falcon*, 457 U.S. at 156) (internal quotation marks omitted); *see also Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331, 338 (4th Cir. 1998). The Fourth Circuit generally treats typicality and commonality as overlapping inquiries. *See Lott*, 200 F.R.D. at 550 (citing *Stott v. Haworth*, 916 F.2d 134, 143 (4th Cir. 1990)). "The typicality requirement is met if a plaintiff's 'claim arises from the same event or course of conduct that gives rise to the claims of other class members and is based on the same legal theory.'" *Parker*, 2015 WL 127930, at *7 (quoting *Comer v. Life Ins. Co. of Ala.*, No. C/A 0:08-228-JFA, 2010 WL 233857, at *4 (D.S.C. Jan. 14, 2010)).

The common questions of law and fact outlined in Section I.C., *supra*, illustrate that the named Plaintiffs' claims in this case are also typical of the claims of the proposed class. The named Plaintiffs were employed pursuant to the same contract as the other H-2B workers, and their claims arise from Defendant's uniform policies and practices applicable to the proposed class as a whole and from the same legal theories common to the class. The named Plaintiffs seek to enforce the same contract terms that were provided to all proposed class members, and to vindicate their rights under the SCPWA for violations that Defendant committed against all

proposed class members. As such, the class representatives' claims are typical of those of the entire class.

### E. The Representative Parties Will Fairly and Adequately Protect the Class's Interests.

Because of due process concerns related to absent class members' being bound by a court judgment, Rule 23(a)(4) requires that representative parties in a class action "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *see also Parker*, 2015 WL 127930, at *8. This two-pronged inquiry requires the district court to evaluate "(1) whether class counsel are qualified, experienced, and generally able to conduct the proposed litigation; and (2) whether Plaintiffs' claims are sufficiently interrelated with and not antagonistic to the class claims as to ensure fair and adequate representation." *Lott*, 200 F.R.D. at 561. The second part of the inquiry turns on whether "actual conflicts are reasonably anticipated." *Parker*, 2015 WL 127930, at *9.

First, Plaintiffs are represented by the Foster Law Firm, L.L.C. and the Southern Poverty Law Center's Immigrant Justice Project, both of which have extensive experience representing workers in class action litigation in federal court. "[T]he adequacy of Plaintiffs' counsel is 'presumed in the absence of specific proof to the contrary.'" *Parker*, 2015 WL 127930, at *9 (quoting *S.C. Nat'l Bank v. Stone*, 139 F.R.D. 325, 330-31 (D.S.C. 1991)). Here, in addition to the presumption of adequacy, counsel submits that they have extensive experience in class action litigation and that the Southern Poverty Law Center has sufficient funds to advance all appropriate costs of this litigation, and that Plaintiffs and counsel will vigorously and competently prosecute this action on behalf of the class. *See* Ex. A (Declaration of James Knoepp). "Courts generally hold that the 'employment of counsel assures vigorous prosecution.'" *Id.* (quoting *S.C. Nat'l Bank*, 139 F.R.D. at 330-31).

11

Second, the named Plaintiffs in this case have no conflicts with the other class members' interests. All class members will benefit from the relief sought by receiving damages under the SCPWA and common law contract requirements. The named Plaintiffs will not benefit in any way that will prove harmful to the interests of other class members. Plaintiffs therefore satisfy the adequacy requirement of Rule 23(a).

## II.     Plaintiffs Satisfy the Requirements of Rule 23(b)(3).

In order to qualify for class certification, Plaintiffs must show that they satisfy, in addition to the prerequisites of Rule 23(a), one of the requirements of Rule 23(b). *EQT*, 764 F.3d at 357. Plaintiffs meet the requirements of Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### A. Common Questions of Law and Fact Predominate.

The predominance requirement of Rule 23(b) is similar to, but "more demanding" than, Rule 23(a)'s commonality requirement, discussed *supra*. *EQT*, 764 F.3d at 366. "Considering whether questions of law or fact common to class members predominate begins . . . with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, — U.S. —, —, 131 S. Ct. 2179, 2184 (2011) (internal quotation marks omitted). The predominance requirement focuses on how common questions of law or fact "relate to the controversy at the heart of the litigation." *EQT*, 764 F.3d at 366. In this case, common questions of law and fact predominate in all of the Rule 23 class claims (Counts II-IV) because the dominant issue for all class members is the legality of Defendant Kiawah's pay practices, which applied uniformly to all putative class members.

12

### 1. Common Questions Predominate for SCPWA Claims.

Plaintiffs' SCPWA class claim, brought as Count II of their Complaint, predominates over any questions affecting only individual members of the class related to the SCPWA. Compl. ¶¶ 82-92. The SCPWA requires that an employer pay its employees "all wages due." S.C. CODE ANN. § 41-10-40(A). The law also prohibits employers from withholding or diverting any portion of an employee's wages unless permitted to do so by state or federal law or unless the employer has "given written notification to the employee of the amount and terms of the deductions" at the time of hiring. *Id.* § 41-10-40(C).

Whether Defendant violated the SCPWA by not paying Plaintiffs and proposed class members proper wages through actual and *de facto* deductions from H-2B workers' paychecks, by not providing H-2B workers notification in writing at the time of hire of the amount or terms of those deductions, and/or by failing to pay H-2B workers the supplemental prevailing wage in 2013, will determine the outcome of the named Plaintiffs' SCPWA claims, and those of proposed class members who experienced Defendant's uniform pay practices. Therefore, the individual Plaintiffs' legal claims are subsumed within, and are identical to, the claims of the proposed class. A single adjudication will resolve the class's SCPWA claim. Moreover, given that these legal and factual questions are common to the class, Defendant will likely assert the same affirmative defenses to the claims of all class members.

### 2. Common Questions Predominate for State Contract Claims.

Similarly, Plaintiffs' state contract class claims, brought as Counts III and IV of their Complaint, predominate over any questions affecting only individual members of the class related to their contracts. Compl. ¶¶ 93-107. Resolution of these claims will turn on the existence of a contract between Defendant and the proposed class members (Count III), or of a contract

between the Defendant and USDOL of which the proposed class members were the intended beneficiaries (Count IV), on the terms of that contract, and on whether Defendant breached that contract by failing to pay its H-2B workers the applicable federal H-2B prevailing wage. Defendant's potential liability for these claims will turn on a class-wide determination of those issues. As such, Plaintiffs' state contract claims are based on common questions of law and fact that predominate over any questions affecting only individual members of the class. *See, e.g.*, *Ramirez v. GLK Foods, LLC*, No. 12-C-210, 2014 WL 2612065, at *8-9 (E.D. Wis. June 11, 2014) (finding that common questions predominated on contract claim for class of H-2B workers); *Jimenez v. GLK Foods, LLC*, No. 12-C-209, 2014 WL 2515398, at *10-12 (E.D. Wis. June 4, 2014) (same).

Plaintiffs will establish that each class member was contractually guaranteed no less than the H-2B prevailing wage through generalized proof of the procedures governing the H-2B program and uniform employment contracts that governed the employment relationship between Defendant and its entire H-2B workforce. Employers who seek to import temporary foreign "guest workers" under the H-2B program must file a detailed application (the ETA Form 9142B) with the United States Department of Labor, which includes written guarantees to pay at least the H-2B prevailing wage and comply with applicable federal regulations, including those governing the H-2B program. *See* 20 C.F.R. § 655.22; *see also* ECF Nos. 1-3 (2013 Kiawah 9142B Forms), 1-4 (2014 Kiawah 9142B Forms). This application and its accompanying assurances constitute the terms and conditions of the job that the employer must offer its H-2B workers as a condition of receiving a certification to import those workers from the U.S. government. A worker accepts the terms in the "Job Offer" by traveling to the United States and working for the employer on one of the H-2B visas granted to the employer. Once the worker accepts the Job Offer, the H-2B

prevailing wage and other guarantees in the offer become contractually enforceable. *See, e.g.*, *Jimenez*, 2014 WL 2515398, at *11; *Teoba v. TruGreen Landcare, LLC*, 10-cv-6132 CJS, 2013 WL 1560208 (W.D.N.Y. Apr. 10, 2013); *W. Colo. Fruit Growers Ass'n v. Marshall*, 473 F. Supp. 693, 696 (D. Colo. 1979); *see also* 79 Fed. Reg. 75182, 75183 (Dec. 17, 2014) ("Because [the H-2B employer] specifically agreed to contractual terms set by USDOL as a condition for importing foreign workers, the company remains bound to those contractual terms.").

In this case, all proposed class members worked under identical job offers and assurances provided by Defendant to USDOL outlining the terms of employment, which constituted an employment contract between Plaintiffs and Defendant (or, in the alternative, between USDOL and Defendant, of which Plaintiffs were the intended beneficiaries). All class members accepted those terms by traveling to the United States on H-2B visas and working for Defendant. Defendant breached those contracts by compensating the Plaintiffs and other class members at rates less than the applicable H-2B prevailing wage for their work. As with Plaintiffs' SCPWA claim, a single adjudication will resolve the class's contract claims, and Defendant will likely assert the same affirmative defenses to the claims of all class members.

### B.  A Class Action Is Superior to Other Methods of Adjudication.

The superiority requirement of Rule 23(b)(3) is analyzed through the four factors enumerated in the rule itself: (1) the interest of class members in individually controlling the prosecution of separate action, (2) the extent and nature of any litigation concerning the controversy already commenced, (3) the desirability of having the litigation of the claims in the particular forum where it has been filed, and (4) the difficulties likely to be encountered in management of the class action. Fed. R. Civ. P. 23(b)(3)(A)-(D).

A class action is superior to any other method of adjudicating the controversy in this case. First, it is extremely unlikely that individual class members have any interest in instituting or controlling their own individual actions. The relatively small size of individual class members' claims substantially diminishes the interest of class members in controlling the prosecution of separate actions. Class members maintain their permanent homes in Jamaica and many class members are currently living there; moreover, they lack familiarity with the U.S. legal system. Most class members are therefore likely unaware of their rights to prosecute these claims, and are likely unable to bring their own individual actions. Courts have regularly found that class litigation is superior in cases brought by temporary H-2 foreign workers for these same reasons. *See, e.g.*, *Jimenez*, 2014 WL 2515398, at *7; *Garcia-Celestino v. Ruiz Harvesting, Inc.*, 280 F.R.D. 640, 648-49 (M.D. Fla. 2012); *Jean v. Torrese*, 278 F.R.D. 656, 663 (S.D. Fla. 2011).

Second, no other litigation concerning this controversy has been commenced against the Defendant by any member of the proposed class.

Third, it is desirable to conduct this litigation in this forum. Defendant conducts significant business in this district, as its resort is located just south of Charleston on Kiawah Island. Likewise, the employer-arranged housing is located in this district. Plaintiffs anticipate that important witnesses to the litigation are located in this district.

Fourth, the benefits of maintaining this action on a class basis far outweigh any administrative burden. *See Williams v. Jones*, No. 9:14-cv-00787-RMG, 2014 WL 2155251, at *10 (D.S.C. May 22, 2014). Because the claims of the Plaintiffs and proposed class members are based on a common set of facts, testimony will not be needed from all of the workers. Requiring separate prosecutions would likely result in far greater manageability issues, including

duplicative discovery procedures, disputes among groups of counsel, repeated adjudication of similar controversies, and excessive costs.

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' Motion for Class Certification and permit this matter to proceed as a class action under Federal Rule of Civil Procedure 23(b)(3) with respect to the claims set forth in Counts II, III, and IV of the Complaint.

Respectfully submitted,

/s/ Nancy Bloodgood
Nancy Bloodgood (Federal Bar No. 5208)
nbloodgood@fosterfoster.com
Lucy Sanders (Federal Bar No. 10834)
lsanders@fosterfoster.com
Foster Law Firm, L.L.C.
895 Island Park Drive, Suite 202
Charleston, SC 29492
Telephone: (843) 972-0313
Facsimile: (888) 519-0934

Sarah M. Rich* (TX Bar No. 24085551)
sarah.rich@splcenter.org
James M. Knoepp* (GA Bar No. 366241)
jim.knoepp@splcenter.org
Michelle R. Lapointe* (GA Bar No. 007080)
michelle.lapointe@splcenter.org
Southern Poverty Law Center
1989 College Ave. NE
Atlanta, GA 30317
Telephone: (404) 521-6700
Facsimile: (404) 221-5857

*Admitted *pro hac vice*.

ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that I have this date electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification to the following attorneys for the Defendants:

    Cherie W. Blackburn
    Molly Hughes Cherry
    Nexsen Pruet, LLC
    205 King Street, Suite 400 (29401)
    P.O. Box 486
    Charleston, SC  29402
    cblackburn@nexsentpruet.com
    mcherry@nexsentpruet.com

    James B. Hood
    Hood Law Firm, LLC
    172 Meeting Street
    Charleston, SC  29401
    james.hood@hoodlaw.com

    David J. Garrett
    Nexsen Pruet, LLC
    4141 Parklake Avenue, Suite 200
    Raleigh, NC  27612
    dgarrett@nexsenpruet.com

                           /s/ Nancy Bloodgood

this 27th day of April, 2015.