**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| ELVIS MOODIE, RAYON FISHER, ) <br> DESMOND ELLIS, and ) <br> KEISHA COLLINS-ENNIS, on behalf of ) <br> themselves and all others similarly situated, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> KIAWAH ISLAND INN COMPANY, LLC, ) <br> d/b/a KIAWAH ISLAND GOLF RESORT, ) <br> ) <br> Defendant. ) <br> ) | Case No. 2:15-cv-01097-RMG |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR APPROVAL OF COSTS AND ATTORNEYS' FEES ASSOCIATED WITH CLASS ACTION SETTLEMENT AGREEMENT**

Pursuant to Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure, Local Rule 54.02, and this Court's June 14, 2016 Order, Plaintiffs hereby move the Court for approval of the $300,000 in costs and attorneys' fees agreed to by the parties as part of their class action settlement. Class Counsel believes this $300,000 figure is reasonable compensation for their out-of-pocket expenses and the time spent litigating this case to a successful settlement on behalf of the class members. As explained in greater detail below, after taking into account out-of-pocket expenses already incurred and future expenses associated with settlement administration, Class Counsel is seeking approval for $250,000 in attorneys' fees, which is far below their lodestar figure, and only 11% of the total amount being paid by Defendant if analyzed under a common fund theory.

1

## FACTUAL BACKGROUND

Plaintiffs Elvis Moodie, Rayon Fisher, Desmond Ellis, and Keisha Collins-Ennis filed this class action lawsuit on March 6, 2015. (ECF No. 1.) Plaintiffs alleged that they, as well as a class of approximately 275 other H-2B workers from Jamaica, the Philippines, and Romania were not paid properly by the Defendant pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 (FLSA), the South Carolina Payment of Wages Act, S.C. Code Ann. §§ 41-10-10, *et seq.* (SCPWA), and their employment contracts. *See* SAC ¶¶ 80-109 (ECF No. 143).

Defendant moved to dismiss Plaintiffs' claims, which the Court denied in substantial part, permitting Plaintiffs to pursue all of their claims with the exception of their third-party beneficiary contract claim. (ECF No. 49.) Plaintiffs successfully moved for collective action status under the FLSA, and for class certification under Rule 23 for their state law claims. (ECF Nos. 47, 58). Eighty (80) individuals, plus the four named Plaintiffs, opted-in to the FLSA collective action. Thirty-five (35) individuals opted-out of the Rule 23 class, leaving 237 class members with respect to the state law claims.

The Parties engaged in extensive discovery, including depositions of all four (4) named Plaintiffs, three (3) FLSA Opt-In Plaintiffs/Rule 23 Class Members, seven (7) depositions of non-H-2B personnel of Defendant, a Rule 30(b)(6) deposition of Defendant, a Rule 30(b)(6) deposition of the agency Defendant uses for assistance in the H-2B process, and a deposition of Defendant's proposed expert. The parties also exchanged extensive written discovery in this case, including almost 200,000 pages of documents produced by the Defendant related to the class members' employment.

The parties participated in two days of mediation with the assistance of a third-party neutral. During the second day of mediation, the parties agreed to a settlement whereby the Rule

23 class members and FLSA collective action members would share in a $2,000,000 Settlement Fund, and Class Counsel would receive $300,000 in costs and attorneys' fees, pending Court approval. Notice was provided to the class members that Class Counsel would seek approval for costs and attorneys' fees in the amount of $300,000. No objections were filed to the settlement agreement or the request for costs and attorneys' fees.

## ARGUMENT

Class Counsel has incurred out-of-pocket expenses in this case in the amount of $33,013.11, and anticipate spending an additional $15,000 in costs associated with settlement administration. (Declaration of James Knoepp ¶¶ 8-9) (Knoepp Decl.) As such, Class Counsel is seeking approval for approximately $50,000 in out-of-pocket expenses and $250,000 in attorneys' fees related to the successful litigation of this action.

This Court's local rules establish that all petitions for attorney's fees shall comply with the requirements set forth in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978). Local Civ. Rule 54.02(A) (D.S.C.). The *Barber* decision focuses on twelve factors, which are:

> "(1) the time and labor expended; (2) the novelty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases."

*Barber*, 577 F.2d 216 at 226 & n.28. Analyzed under these factors, Class Counsel's request for $250,000 is fair and reasonable.

3

### (1) <u>**The time and labor expended.**</u>

Plaintiffs' proposed $250,000 in attorneys' fees is based on the following amount of hours reasonably expended by attorneys and paralegals in this matter:

| **Person** | **Law School Graduation** | **Hours** | **Proposed Rate** | **Total** |
|---|---|---|---|---|
| Nancy Bloodgood, Attorney | 1983 | 45.3 | $425 | $19,252.50 |
| James Knoepp, Attorney | 1998 | 289.4 | $425 | $122,995.00 |
| Michelle Lapointe, Attorney | 2008 | 316.64 | $375 | $118,740.00 |
| Sarah Rich, Attorney | 2011 | 481.1 | $275 | $132,302.50 |
| | | | | |
| Carmen Martinez, Paralegal | N/A | 151.87 | $100 | $15,187.00 |
| Amanda Kramer, Paralegal | N/A | 20.0 | $100 | $2,000.00 |
| | | | | |
| **Total Lodestar Figure** | | | | **$410,477.00** |

*See* Knoepp Decl. ¶¶ 5-7 & Exhibits A, B to Knoepp Decl.; Ex. A to Declaration of Michelle Lapointe (Lapointe Decl.); Ex. A to Declaration of Sarah Rich (Rich Decl.); Declaration of Nancy Bloodgood ¶¶ 4-5 (Bloodgood Decl.) & Ex. A to Bloodgood Decl.

These hours are reasonable given that this litigation involved responding to a lengthy motion to dismiss, motions for collective action and class action certification on behalf of approximately 250 individuals, extensive discovery involving more than 200,000 individually labeled documents, multiple depositions, and two separate mediation sessions that resulted in an excellent monetary settlement for the class members. Plaintiffs' counsel exercised billing judgment and reduced the total number of hours claimed above from that which were actually worked, resulting in a reduction of $40,830.00 in the lodestar figure based on their requested billing rates. *See* Knoepp Decl. ¶ 7 & Exhibits A, B to Knoepp Decl.; Ex. A to Lapointe Decl.; Ex. A to Rich Decl. Furthermore, the hours claimed above eliminate all of the time spent answering inquiries from class members about the settlement, searching for and making contact

with class members who had not yet submitted their claim forms or whose mail was returned due to a bad address, the bulk of the work on this motion, and attendance at the upcoming hearing on the motion for final approval of the settlement.  Knoepp Decl. ¶ 7.

The rates identified in the chart above are also reasonable.  Class Counsel have extensive experience litigating complex labor and employment class actions on behalf of migrant workers and their proposed rates are consistent with what similar attorneys would charge in the Charleston market, and are consistent or below what some of those attorneys have received in other cases.  *See* Declaration of Susan K. Dunn ¶¶ 6-8; Knoepp Decl. ¶ 10 ($500 rate for litigation conducted in 2012); Lapointe Decl. ¶ 7 ($350 rate for litigation conducted in 2012).

In sum, Class Counsel seek approval for $250,000 in attorneys' fees for their time spent on this litigation, which is only 60% of their lodestar figure, even after the various deductions counsel has made to reduce that figure.

### **(2)     The novelty of the questions raised.**

This case raised several novel issues of law peculiar to the representation of H-2B temporary foreign workers.  For example, the issue of whether a contract was formed between the Defendant and its H-2B workers based on the labor certification applications filed by Defendant, and the terms of those contracts, was a subject of Defendant's motion to dismiss.  The court's decision that the law and regulations applicable to the H-2B program were part of the contract established a legal precedent that has been relied upon by other courts in cases involving H-2B workers.  *See Cuellar-Aguilar v. Deggeller Attractions, Inc.*, 812 F.3d 614, 619-20 (8th Cir. 2015); *Cordova v. R & A Oysters, Inc.*, 169 F. Supp. 3d 1288, 1292-94 (S.D. Ala. 2016).  Likewise, a novel issue was presented as to whether state law claims seeking unpaid wages up to the level of the higher H-2B prevailing wage were preempted by the FLSA.  The court's decision

5

holding that such claims were not preempted has also been relied upon by other courts analyzing claims for unpaid wages brought under state law.  *See, e.g.*, *Guerra v. Guadalajara, IV*, No. 3:16CV00020, 2016 WL 3766444, at *3 (W.D. Va. July 7, 2016).  And, Plaintiffs' claim that tips left by customers did not constitute "wages" under the SCPWA, and could therefore not be used to satisfy Defendant's obligation to pay the H-2B prevailing wage, was a matter of first impression in South Carolina.

### (3)     The skill required to properly perform the legal services rendered.

Specialized knowledge of the FLSA and the H-2B visa program was necessary to effectively litigate this case, as was experience handling collective actions and class actions involving migrant workers who maintain their permanent residences in foreign countries.  Class Counsel has extensive experience litigating FLSA claims and state law claims on behalf of large classes of H-2A and H-2B temporary foreign workers that was important in surviving Defendant's motion to dismiss, obtaining class certification, and effectively litigating the case to a successful conclusion.

### (4)     The attorney's opportunity costs in pressing the instant litigation.

SPLC is a non-profit civil rights organization with limited financial and human resources.  A significant portion of SPLC resources within its Immigrant Justice Project was devoted to this case.  While this case did not preclude SPLC from taking on additional cases, the commitment of attorney resources to this case necessarily limited other work those attorneys were able to handle within the Immigrant Justice Project.

### (5)     The customary fee for like work.

In many class actions such as this case, class counsel seeks a percentage of the total recovery, or amounts paid by Defendant, pursuant to a common fund theory.  *See DeWitt v.*

6

*Darlington County, S.C.*, No. 4:11-cv-00740-RBH, 2013 WL 6408371, at *6-7 (D.S.C. Dec. 6, 2013). That percentage is typically anywhere from 20% to 45% of the total recovery obtained. *See id.* at *7, *9 (citing several examples). In this case, Class Counsel's proposed fees and costs of $300,000 would amount to a only 13% of the total amount of $2,300,000 being paid by Defendant, and only 11% of the total amount if you exclude the approximate $50,000 in out-of-pocket expenses incurred by Class Counsel.

**(6)     The attorney's expectations at the outset of the litigation.**

As a non-profit civil rights firm, SPLC does not charge its clients any fees for its services. As such, SPLC only recovers fees when the clients' claims involve statutes with attorneys' fees provisions. Nancy Bloodgood, a private attorney in Charleston, agreed to assist the SPLC attorneys as local counsel and represent the clients and class members on a *pro bono* basis. Because this case involved claims under the FLSA and the SCPWA, both of which allow for attorneys' fees, Class Counsel expected that they would obtain an award of fees and costs following successful litigation of this case. *See* 29 U.S.C. § 216(b) (FLSA); S.C. Code Ann. § 41-10-80(C) (SCPWA). As part of the settlement, Class Counsel significantly reduced what it might otherwise have expected to obtain by filing a full fee petition upon the conclusion of the case.

**(7)     The time limitations imposed by the client or circumstances.**

Other than statute of limitations concerns related to when potential FLSA opt-in Plaintiffs would return their consents-to-sue, there were no other time constraints or limitations imposed by the clients or the circumstances of this case.

**(8)     The amount in controversy and the results obtained.**

Class Counsel believes it obtained an excellent result in this case on behalf of the class.

7

As the parties' joint motion for final approval of the settlement outlines, class members are receiving more than 150% of the wages they were potentially owed under state law for almost every claim brought in this case, after taking into account damages and interest payments. Class members will also receive a 100% reimbursement of the alleged overcharges for housing and transportation they paid. Moreover, those who opted-in to the FLSA collective action are receiving 100% of their unpaid wages, plus full liquidated damages, on almost all of the claims brought under the FLSA. The only area in which class members and FLSA collective action members are not receiving more than 100% of what they may have been owed as unpaid wages is with respect to the tip credit claims, which were the most difficult claims pursued under the SCPWA and the FLSA.

**(9)     The experience, reputation and ability of the attorney.**

The Class Counsel team was comprised of experienced attorneys who specialize in labor and employment litigation. Those attorneys who are employed at SPLC also have extensive experience representing migrant guest workers in class action cases.

Attorney Nancy Bloodgood graduated from Catholic University School of Law in 1983 where she was an Associate Editor of the Law Review. She has been recognized as one of the top Employment and Labor Law attorneys in South Carolina in the past nine (9) years of Super Lawyers publications. Bloodgood Decl. ¶¶ 2-3.

Attorney James Knoepp graduated *cum laude* from Loyola of Los Angeles Law School in 1998 and was the recipient of a Skadden Fellowship. Knoepp Decl. ¶¶ 2-3. He is an experienced public interest attorney who has handled a number of complex class action cases for migrant workers. Knoepp Decl. ¶¶ 1-4.

Attorney Michelle Lapointe graduated *magna cum laude* from American University

8

Washington College of Law in 2008. Lapointe Decl. ¶ 2. Ms. Lapointe has litigated a number of complex civil rights matters and represented thousands of clients through class action litigation. *Id.* ¶ 3.

Attorney Sarah Rich graduated from the University of California, Berkeley, School of Law in 2011 where she was awarded Order of the Coif. She also obtained a Master's Degree in Public Affairs from Princeton University in 2011. Rich Decl. ¶ 2. She served as a law clerk to the Honorable Richard A. Paez on the Ninth Circuit Court of Appeals in 2011 and 2012. *Id.*

### (10) The undesirability of the case within the legal community in which the suit arose.

Unfortunately, there are relatively few organizations and/or private attorneys willing to bring lawsuits on behalf of migrant guest workers who maintain their permanent residences in foreign countries. Due to Congressional restrictions, most H-2B visa holders are also ineligible for federally funded legal services, limiting even further those workers' options for seeking legal assistance when they believe they have not been paid properly. At the time this suit was filed, there were no legal services organizations in the Charleston area providing *pro bono* or *low bono* legal representation in cases such as this. Moreover, having specialized knowledge of the regulatory framework involving the H-2B program was important in properly representing the Plaintiffs in this case. That expertise is not readily available in the Charleston legal market.

### (11) The nature and length of the professional relationship between attorney and client.

This is the first time Class Counsel has represented any of the Plaintiffs or other class members. Because of the Plaintiffs' and class members' lack of familiarity with the United States legal system, Class Counsel spent some additional time explaining the legal process to their clients and conducting meetings with class members to answer their questions and

concerns. The case was complicated somewhat by certain class members' fear that participation in the litigation would adversely affect their ability to continue working for the Defendant and/or their ability to obtain H-2B work visas in the future, as was evidenced by the receipt of exclusion forms from approximately 10% of the class members prior to the settlement.

  **(12)**  **Attorneys' fees awards in similar cases.**

As mentioned previously, in many class action settlements such as this case, class counsel seeks a percentage of the total money paid in settlement based on a common fund theory. Those percentages range from 20% to 45%, with 33% being a somewhat typical amount. *DeWitt*, 2013 WL 6408371, at \*6-9. Thus, an award of costs and fees of more than $750,000 would not be an uncommon request in this case were it handled by private counsel. Here, counsel is seeking approval of a figure that is only one-third of a typical award.

## CONCLUSION

Based on the foregoing, Plaintiffs' motion for approval of the $300,000 in costs and attorneys' fees agreed to in the class action settlement should be granted.

Respectfully submitted,

/s/ Nancy Bloodgood
Nancy Bloodgood (Federal Bar No. 5208)
nbloodgood@fosterfoster.com
Lucy Sanders (Federal Bar No. 10834)
lsanders@fosterfoster.com
Bloodgood & Sanders, L.L.C.
242 Mathis Ferry Road, Suite 201
Mount Pleasant, SC 29464
Telephone: (843) 972-0313
Facsimile: (843) 352-4714

Sarah M. Rich* (GA Bar No. 281985)
sarah.rich@splcenter.org
James M. Knoepp* (GA Bar No. 366241)
jim.knoepp@splcenter.org
Michelle R. Lapointe* (GA Bar No. 007080)
michelle.lapointe@splcenter.org
Southern Poverty Law Center
1989 College Ave. NE
Atlanta, GA 30317
Telephone: (404) 521-6700
Facsimile: (404) 221-5857

*Admitted *pro hac vice*.

ATTORNEYS FOR PLAINTIFFS

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I have this date electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification to the following attorneys for the Defendants:

Cherie W. Blackburn
Molly Hughes Cherry
Nexsen Pruet, LLC
205 King Street, Suite 400 (29401)
P.O. Box 486
Charleston, SC  29402
cblackburn@nexsentpruet.com
mcherry@nexsentpruet.com

James B. Hood
Hood Law Firm, LLC
172 Meeting Street
Charleston, SC  29401
james.hood@hoodlaw.com

David J. Garrett
Nexsen Pruet, LLC
4141 Parklake Avenue, Suite 200
Raleigh, NC  27612
dgarrett@nexsenpruet.com

         /s/ Nancy Bloodgood         

this 5th day of December, 2016.